UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASATRYAN GEVORG,<br><br>        Petitioner,<br><br>    v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al,<br><br>        Respondents. | Case No. 1:25-cv-00992-HBK (HC)[1]<br><br>ORDER GRANTING RESPONDENT'S MOTION TO DISMISS<br><br>(Doc. No. 13) |

        Petitioner Asatryan Gevorg, an immigration detainee in U.S. Immigration Customs and Enforcement (ICE) custody at the Golden State Annex Detention Facility in McFarland, California, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 1, "Petition"). The Petition raises the following claim for relief: Petitioner's detention without a bond hearing for more than six months is unconstitutional, and "even absent a bright line six-month standard," after applying the three-part test in *Mathews v. Eldridge*[2] test or an alternate multi-factor reasonableness test, his continued detention without a bond hearing violates his procedural due process rights under the Fifth Amendment.[3] (*Id.* at 8-

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 12).

[2] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[3] As noted by Respondent, the pre-printed "form" Petition erroneously argues that the Immigration Court

1   13). As relief, Petitioner asks the Court to issue a declaration that his "ongoing prolonged
2   detention" violates his due process rights, issue a writ of habeas corpus, and hold a bond hearing
3   before this Court; or in the alternative, to be provided a bond hearing before an immigration judge
4   ("IJ") where the Government must justify his continued detention by clear and convincing
5   evidence. (*Id*. at 2, 17). In response, on October 24, 2025, Respondent filed a Motion to Dismiss
6   ("Motion") arguing the Petitioner is subject to mandatory detention pursuant to 8 U.S.C. §
7   1225(b)(1)(B)(ii), and his "prolonged detention is not unreasonable and is caused by his own
8   requests for continuances." (Doc. No. 13 at 3-5). Petitioner declined to file an opposition before
9   the deadline. (*See* Doc. No. 8 at 3, ¶ 5 directing a response to a motion to dismiss in twenty-one
10  (21) days).

    Given his detention status under § 1225(b)(1) as an "arriving alien" who has not yet been
    admitted to the United States pending consideration of his application for asylum,[4] the Court
    grants Respondent's Motion to Dismiss and dismisses the Petition for the reasons set forth below.

## I.   BACKGROUND

Petitioner, a native and citizen of Armenia, entered the United States on November 27, 2024, at the Otay Mesa Port of Entry in Otay Mesa, California without a scheduled appointment or documents allowing him to legally enter or remain in the United States. (Doc. No. 13-1 at 2, ¶ 6-7, Exhs. 1, 2). Petitioner was placed in expedited removal proceedings as an arriving alien pursuant to 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") and taken into custody. (*Id.*). On December 23, 2024, Petitioner received a credible fear interview, and on

---

lacks jurisdiction under 8 U.S.C. § 1226(c), and the Petition repeatedly cites case law regarding the constitutionality of detention without a bond hearing for noncitizens held under 8 U.S.C. § 1226(c). (*See* Doc. No. 1 at 7-13). Here, Petitioner is under mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). Both § 1225(b)(1) and § 1226(c) require mandatory detention of the respective noncitizen; however, "aliens subject to detention as applicants for admission are entitled … to a lesser extent [of Due Process protections] than those which would apply to aliens subject to mandatory detention under § 1226(c) who are already considered to have entered the country." *Otis V. v. Green*, 2018 WL 3302997, at *7; *see also Demore*, 538 U.S. at 547 (noting Supreme Court law has "accorded [legal permanent residents] greater protections than other aliens under the Due Process Clause."). Thus, regardless of the Petition's reliance on "balancing tests" originally applied by United States district and circuit courts to determine the constitutionality of detention without a bond hearing under § 1226(c), the Court limits its consideration here to relevant district court cases evaluating whether prolonged detention of a petitioner under § 1225(b)(1) without a bond hearing violates due process.

[4] Nowhere in the supplemental briefing has either party indicated that Petitioner's status has changed.

December 31, 2024, after the asylum officer found Petitioner demonstrated a credible fear of persecution or torture, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear that (1) vacated the Order of Expedited Removal pursuant to 8 C.F.R. § 208.30, (2) charged Petitioner with removability under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) (alien without valid entry documents), and (2) ordered Petitioner to appear before an Immigration Judge ("IJ"). (*Id*. at 2, ¶ 9, Exh. 3).

Respondent attests that Petitioner appeared at six master calendar hearings, with his attorney at all but the first hearing, and was given multiple continuances including (1) on January 14, 2025 to obtain an interpreter, (2) on February 25, 2025 to "prepare and file an application for relief from removal and to submit country conditions evidence, (3) on March 24, 2025 to submit supplemental documentation, (4) on April 22, 2025 to submit additional corroborating evidence, (5) on June 3, 2025 to schedule an individual hearing to adjudicate the merits of Petitioner's application for relief and protection for August 7, 2025 which was subsequently reset due to the IJ's reassignment and leave, and (6) on September 26, 2025 to schedule an individual hearing to adjudicate the merits of Petitioner's application for relief and protection for November 10, 2025 (after Petitioner was offered a hearing date of October 8, 2025, but he requested a hearing after October 25, 2025). (*Id*. at 2-3, ¶ 10-16).

Petitioner has been continuously detained in ICE custody under the mandatory detention provisions in § 235(b) of the INA and 8 U.S.C. 8 U.S.C. § 1225(b)(1)(B)(ii) since November 27, 2024, and is currently being held at the Golden State Annex ICE Processing Facility in MacFarland, California. (*Id.* at 3-4, ¶ 17-18).

## II.  APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d

418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

### A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### B. Mandatory Detention under 8 U.S.C. § 1225(b)(1)(B)(ii)

Title 8 U.S.C. § 1225 applies to "applicants for admission," – noncitizens who "arrive[] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). "Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or … an alien interdicted … and brought in to the United States by any means." 8 C.F.R. § 1.2. "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting § 1225(a)(3)). Once "an immigration officer determines" that an arriving alien "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7).

However, if an applicant "indicates either an intention to apply for asylum … or a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer finds the applicant has a credible fear of persecution, the applicant "shall be detained for further consideration of the application for asylum;" and if the officer determines there is no credible fear of persecution, the officer "shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(ii), (iii)(I), (IV) ("alien subject to the procedures under this clause shall be detained

pending a final determination of credible fear of persecution and, if found to not have such a fear, until removed."). "[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)); *see also* 8 C.F.R. § 212.5(a) (parole requests are considered by designated officials including ICE "directors of field operations"). Thus, as explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1168 (W.D. Wash. 2023) ("The Attorney General [has] interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond hearings for asylum seekers who were initially subject to expedited removal but later transferred to full removal proceedings after establishing a credible fear.") (citing *Matter of M-S-*, 27 I. & N. Dec. 509, 515-17 (2019)).[5]

At the time the instant Petition was filed in August 2025, Petitioner had been detained for more than 7 months. (Doc. No. 1 at 2). Petitioner does not dispute that he entered the United States at a port of entry and applied for admission without valid entry documents and was processed for expedited removal pursuant to 212(a)(7)(A)(i)(I) of the INA. (Doc. No. 13-1 at 2, ¶ 6-7, Exhs. 1, 2). It is further undisputed that Petitioner was found to have a credible fear of persecution and is therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) for further consideration of his application for asylum. (Doc. No. 13 at 4-5); *see Jennings*, 583 U.S. at 297. Thus, Petitioner is not <u>statutorily</u> entitled to a bond hearing. *Id*. However, Petitioner does not dispute the grounds for his mandatory detention; rather, he contends that his prolonged

---

[5] There is ongoing class action litigation asserting a due process right to a bond hearing for individuals determined to be inadmissible to the United States that demonstrate a credible fear of persecution or torture if returned to their home country. *See Padilla v. ICE*, No. 2:18-cv-00928-MJP (W.D. Wash.), appeal pending Case No. 24-2801 (9th Cir.) (argument in May 2025).

1  detention without a bond hearing alone violates his Fifth Amendment due process rights.  (Doc.
2  No. 1 at 8-13)

### C. Detention under 1225(b) without a Bond Hearing

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  Further, it is "well-established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 305 (1993*); Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("this Court has held that the Due Process Clause protects an alien subject to a final order of deportation"). However, the Supreme Court has repeatedly directed that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Demore*, 538 U.S. at 513 ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules as to aliens that would be unacceptable if applied to citizens."); *see also Zadvydas*, 533 U.S. 718 (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."); *Carlson v. Landon*, 342 U.S. 524, 538 ("Detention is necessarily a part of this deportation procedure.  Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings.").

Nonetheless, the Supreme Court has repeatedly acknowledged that "the nature of protection [under the Due Process clause] may vary depending on [immigration] status and circumstance." *Zadvydas*, 522 U.S. at 694 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'"); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (collecting cases) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application ... [H]owever, once an alien

6

gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (citing *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)) (finding petitioner's continued exclusion did not deprive him of any statutory or constitutional right, and emphasizing that "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law. But an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure is authorized by Congress is, it is due process as far as an alien denied entry is concerned.'").

As relevant here, "[i]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (observing that "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context, whether the claims were brought by an alien under § 1226(a) or another provision."). The pertinent line of authority starts with *Zadvydas v. Davis*, 533 U.S. 678 (2001), wherein the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." *Prieto-Romero*, 534 F.3d at 1062 (citing *Zadvydas*, 533 U.S. at 684-86). The Court held that detention under § 1231(a)(6) is limited to a presumptively reasonable period of six months, after which a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. However, as relevant here, the Supreme Court in *Jennings* later

7

distinguished "*Zadvydas's* interpretation of § 1231(a)(6)" from detention under § 1225(b)(1) and (b)(2) because "while *Zadvydas* found § 1231(a)(6) to be ambiguous, the same cannot be said of §§ 1225(b)(1) and (b)(2): Both provisions <u>mandate</u> <u>detention</u> until a certain point and <u>authorize</u> <u>release</u> prior to that point <u>only</u> <u>under</u> <u>limited</u> <u>circumstances</u>." *Jennings*, 583 U.S. 301 (emphasis added).

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial due process challenge to mandatory detention of a lawful permanent resident under 8 U.S.C. § 1226(c), and distinguished *Zadvydas* because mandatory detention under 8 U.S.C. § 1226(c) has a "definite termination point" when a decision is made regarding the alien's removability. *Id*. at 529. Justice Kennedy concurred with the decision, thereby creating the majority, but noted "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." (*Id*. at 532) (Kennedy, J., concurring).

In 2015, the Ninth Circuit applied the canon of constitutional avoidance to hold that for noncitizens detained under 8 U.S.C. §§§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention." *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).   However, in *Jennings v. Rodriguez*, the Supreme Court found the Ninth Circuit misapplied the canon of constitutional avoidance and the "implicit 6-month time limit on the length of mandatory detention" under § 1225(b) and § 1226(c) "falls far short of a 'plausible statutory construction.'" 583 U.S. at 296-97, 303-04.  As noted *supra*, the Court interpreted § 1225(b)(1) and (b)(2) to "provide for detention for a specified period of time" – to wit – "until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for 'further consideration of the application for asylum,' and § 1225(b)(2) aliens are in turn detained for '[removal] proceeding[s].'  Once those proceedings end, detention under § 1225(b) must end as well." *Id*. at 297, 302.  Of particular relevance here, the Court explicitly noted that neither § 1225(b)(1) or (b)(2) say "anything whatsoever about bond hearings." *Id*. at 297.  Ultimately, the Supreme Court found the Ninth

8

Circuit "erroneously concluded that periodic bond hearings are required under the immigration provisions at issue," and remanded to the Ninth Circuit to "consider the constitutional arguments on their merits." *Id.* at 312. Thus, while *Jennings* concluded that § 1225(b)(1) authorized detention without a bond hearing on its face, it did not provide specific guidance as to whether an alien could assert an as-applied challenge to prolonged detention without a bond hearing under the Fifth Amendment due process clause.

Despite the lack of specific guidance from the Supreme Court or the Ninth Circuit on whether due process requires a bond hearing for noncitizens subject to mandatory detention for further consideration of an application for asylum under § 1225(b)(1)(b)(ii), multiple United States district courts have found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *See, e.g., Banda v. MacAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019). A survey of these decisions reveals a myriad of overlapping balancing tests, often initially conceived and applied in the context of a lawful permanent resident detained under § 1226(c), to determine whether detention of an arriving alien under a § 1225(b) without a bond hearing has become so prolonged that it violates petitioner's due process rights under the Fifth Amendment.[6] *See id.* (finding 17-month detention of asylum seeker without bond hearing was "unreasonably prolonged" after conceiving and applying a multi-factor test that considers (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays in the removal proceedings caused by detainee, (5) delays in the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal); *Hong v. Myorkas*, 2022 WL 1078627, at *3 (W.D. Wash. (applying *Banda* factors and *Mathews v. Eldridge* to find detention for nearly 30 months without

---

[6] Detention under both § 1225(b) and § 1225(c) is mandatory. However, conflating the analysis of noncitizens held under these two distinct statutory frameworks arguably does not account for Supreme Court precedent distinguishing the rights of a aliens already present in the United States from an applicant for admission. *See, e.g., Otis V. v. Green*, 2018 WL 3302997, at *7 (D.N.J. July 5, 2018) ("aliens subject to detention as applicants for admission are entitled to Due Process Protections, albeit to a lesser extent than those which would apply to aliens subject to mandatory detention under § 1226(c) who are already considered to have entered the country"); *see also Jennings*, 583 U.S. at 303. As such, the court limits its consideration here to district court cases evaluating whether prolonged detention of a petitioner under § 1225(b) without a bond hearing violates due process.

9

a bond hearing violated due process, and noting "district courts around the country have agreed that mandatory detention pending completion of removal proceedings 'without a bond hearing, will – at some point – violate the right to due process.'") (internal quotations omitted) (collecting cases) (citing *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022), *vacated on other grounds*, 144 S. Ct. 1339 (2024)); *Abdul-Samed*, 2025 WL 2099343 (applying *Lopez* test previously directed at noncitizens detained pursuant to § 1226(c) and determining detention for 16 months without a bond hearing violated due process); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772–73 (S.D. Cal. 2020) (applying *Banda* factors and finding detention for over 20 months without bond hearing violated due process); *Leke v. Holt*, 521 F. Supp. 3d 597, 605 (E.D. Va. 2021) (applying no balancing test and determining detention for 24 months without bond hearing violated due process); *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (applying *Banda* factors and finding detention for 18 months without bond hearing violated due process); *Pierre v. Doll*, 305 F. Supp. 3d 327 (M.D. Pa. 2018) (applying no balancing test and finding detention for two years pending resolution of asylum application without a bond hearing was unreasonable); Perez v. Decker, 2018 WL 3991497 (S.D.N.Y. Aug. 20, 2018) (applying 3-factor test and finding detention for nine months without a bond hearing was unreasonable); *Rodriguez-Figueroa v. Barr*, 442 F. Supp. 3d 549, (W.D.N.Y. 2020) (applying *Mathews v. Eldridge* and 7-factor test previously directed at noncitizens detained pursuant to § 1226(c) to determine the length of detention without a bond hearing was unreasonable); *da Silva v. Nielsen*, 2019 WL 13218461 (S.D. Tx. Mar. 29, 2019) (applying 3-factor test and finding detention without a bond hearing for "just over a year" was unreasonably prolonged in violation of due process rights); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. Jan. 22, 2019) (applying 6-factor test and finding continuing to detain noncitizen for 19 months without a bond hearing would violate his due process rights).

In contrast, a number of United States district courts have determined on a case-by-case basis that mandatory detention under § 1225(b)(1) without an individualized bond hearing was not a violation of due process. *Navarrete-Leiva v. Current or Acting U.S. Att'y Gen.*, 2024 WL 5111780, at *4 (E.D. Cal. Dec. 13, 2024) (finding due process considerations are "not at issue"

because petitioner was provided two parole reviews, and "petitioner's detention is not indefinite; there is a clear termination point at the conclusion of petitioner's various legal challenges*");* *Lopez v. United States Dep't of Homeland Sec.*, 2021 WL 2079840, at *3 (D. Ariz. Jan. 28, 2021) (finding petitioner's continued detention is constitutional as "it does not appear from the record … that petitioner's removal or release is not "reasonably foreseeable"); *Fatule-Roque v. Lowe*, 2018 WL 3584696, at *6 (M.D. Pa. July 26, 2018) (finding detention for 15 months "[had] not become arbitrary or unreasonable" and was therefore not "an unconstitutional application of the statute," and noting the length of detention can be "attributed, in large part, to the multiple motions to reset [petitioner] submitted before the Immigration Court"); *Ford v. Ducote*, 2020 WL 8642257 (W.D. La Nov. 2, 2020) (finding no due process violation as detention not indefinite or "potentially permanent," in contrast to *Zadvydas*, rather, it "ends when the removal proceedings end"); *D.A.F. v. Warden, Stewart Detention Center*, 2020 WL 9460467, at *10-11 (M.D. Ga. May 8, 2020) (collecting cases) (finding fifteen months of detention "failed to rise to the level of unreasonably prolonged detention" and noting his immigration case "has not simply sat idle"); *Otis V. v. Green*, 2018 WL 3302997, at *8 (D.N.J. July 5, 2018) (relying on prior intra-district cases to find petitioner's detention under § 1225(b) for just over a year, "given the lesser Due Process protections applicable to applicants for admission, insufficient to render continued detention so suspect as to require a bond hearing); *Pipa-Aquise v. Bondi*, 2025 WL 2490657, at *2 (E.D. Va. Aug. 5, 2025) (finding detention for two months does not reach the "threshold" of becoming "unreasonable and constitutionally infirm"); *Serrano-Ramirez v. Doll*, 2020 WL 2735358, at *3 (M.D. Pa. May 26, 2020) (finding petitioner detained for a little over one year was not entitled to a bond hearing because "detention had not yet reached the point of being arbitrary or unreasonable").

    Here, to the extent Petitioner maintains his detention under § 1225(b)(1)(B)(ii) in excess of six months without a bond hearing is unconstitutional on its face, such an argument is inapposite. (Doc. No. 1 at 8-9). As discussed above, the Supreme Court soundly rejected this facial challenge in *Jennings*. 583 U.S. at 304 (an "implicit 6-month time limit on the length of mandatory detention" falls "far short of a 'plausible statutory construction.'"); *see also Abdul-*

11

*Samed*, 2025 WL 2099343, at *5 (citing *Black v. Decker*, 103 F.4th 133, 150 (2d Cir. 2024) (noting three circuit courts of appeals that have "rejected a bright-line constitutional rule requiring a bond hearing after six months of detention" and declining to "adopt a presumption of reasonableness or unreasonableness of any duration of detention").

Next, Petitioner argues he is entitled to an individualized bond hearing because his 7-month detention has become unreasonably prolonged, and his continued detention without individualized review is unreasonable under a *Mathews v. Eldridge* balancing test or a "multi-factor" reasonableness inquiry such as the test applied by the Third Circuit. (Doc. No. 1 at 9-13 (citing *German Santos v. Warden Pike*, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing after finding mandatory detention under § 1226(c) for 2 ½ years was unreasonable according to reasonableness test fashioned from previous cases using four non-exhaustive factors: (1) duration of detention, (2) whether detention is likely to continue, (3) reasons for delay, and (4) whether the conditions of confinement are meaningfully different from criminal punishment.)). In response, Respondent argues that Petitioner is properly detained as mandated under § 1225(b)(1)(B)(ii) pending consideration of his asylum application; moreover, his detention is constitutionally permissible because removal proceedings are ongoing, largely due to Petitioner's own requests for continuances, and the proceedings have a definite termination point (Doc. No. 13 at 3-5 (citing *Demore*, 538 U.S. at 531; *Jennings*, 583 U.S. at 303)).

In the absence of binding authority on this issue, and after thorough review of the statutory text of § 1225(b)(1)(B)(ii), relevant Supreme Court precedents, and the various district court cases identified above, this Court finds the threshold question in considering Petitioner's claims of unreasonably prolonged detention under § 1225(b) without a bond hearing is whether Petitioner's continued detention serves the purported immigration purpose and has a definite termination point, as opposed to any "balancing test" to determine whether procedural due process is due.[7] The application of a uniform balancing test— the one-size-fits-all approach—

---

[7] As the Court declines to apply a balancing test in this case, it is unnecessary to consider Petitioner's argument that Petitioner is constitutionally entitled to a bond hearing based on the *Mathews v. Eldridge* factors. (Doc. No. 1 at 18-23; Doc. No. 12 at 13-20).

12

ignores the express statutory distinctions enacted by Congress and dilutes the principle of due process.  The Supreme Court has repeatedly reaffirmed its "longstanding view that the government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Demore*, 538 U.S. at 526; *Zadvydas*, 533 U.S. at 701; *Jennings*, 583 at 304.

Here, as proceedings are still actively "pending a final determination of credible fear of persecution," detention of Petitioner is mandatory under the statutory text of § 1225(b)(1)(B)(ii).  However, "[u]nlike aliens detained under 8 U.S.C. § 1231 whose detention could be 'indefinite' and 'potentially permanent,' aliens detained under § 1225(b) face a definite termination point." *Navarrete-Leiva*, 2024 WL 5111780, at *4 (citing *Demore*, 538 U.S. at 528-29); *Jennings*, 583 U.S. at 297 ("Once those proceedings end, detention under § 1225(b) must end as well."). Despite Petitioner's general allegation that his detention is "likely to continue as [he] asserts [his] right to seek immigration relief," (Doc. No. 1 at 13, ¶ 39), Petitioner offers no evidence that his detention is indefinite or potentially permanent.  In other words, Petitioner's detention will end once his petition for asylum is granted or denied.

Moreover, Petitioner does not argue, nor does the Court discern, that the ongoing proceedings regarding his application for asylum are intended to "incarcerate [him] for other reasons," nor does Petitioner argue that his detention does not serve "its purported immigration purpose" or that he is being detained indefinitely. *See Demore*, 538 U.S. at 533 (Kennedy, J., concurring).  Petitioner also does not point to any "unreasonableness" in the length of removal proceedings that is directly attributable to the government; rather, as argued by Respondent, the delay appears largely to be a direct result of Petitioner taking full advantage of his opportunity to seek asylum. *See Demore*, 538 U.S. at 530-31 ("Respondent was detained for somewhat longer than the average … but respondent himself had requested a continuance of his removal hearing."); *Fatule-Roque*, 2018 WL 3584696, at *6 (noting the length of detention can be "attributed, in large part, to the multiple motions to reset [petitioner] submitted before the Immigration Court").  "While [Petitioner] certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a

1   bond hearing." *Oladipupo*, 2023 WL 3568498, at *5 (noting there was "no indication
2   proceedings were unreasonably delayed for any reason attributable to the government," rather, the
3   length of petitioner's detention "is primarily attributable to the avenues for relief that he has
4   pursued and his requests for extensions of time.").

5   　　　To find Petitioner—an arriving asylum seeker who had not yet been admitted to the
6   United States and has an asylum application pending—is entitled to a bond hearing solely based
7   on the length of his detention would render § 1225(b)(1) meaningless and disregard statutorily
8   and constitutionally significant differences among the categories of aliens seeking habeas relief.
9   To be clear, this common-sense reasoning does not foreclose the possibility of a due process
10  violation and bond hearing for a § 1225(b)(1) detainee where circumstances evince that detention
11  is <u>indefinite</u> or <u>for</u> <u>some</u> <u>other</u> <u>non-immigration</u> <u>purpose</u>. In *Demore*, the Court acknowledged
12  that "detention … d[oes] not serve its purported immigration purpose" when removal is "no
13  longer practically attainable." 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690) (where
14  "detention's goal is no longer practically attainable, detention no longer bears a reasonable
15  relation to the purpose for which the individual was committed"); *see also id*. at 532-33
16  (Kennedy, J., concurring) ("Were there to be an unreasonable delay by INS in pursuing and
17  completing deportation proceedings, it could become necessary then to inquire whether the
18  detention is not to facilitate deportation, or to protect against the flight or dangerousness, but to
19  incarcerate for other reasons."); *Wong Wing v. United States*, 163 U.S. 228, 237-38 (1896)
20  (finding civil detention of a removeable noncitizen violates the Constitution if it is punitive).
21  Moreover, while not cognizable on habeas review, nothing in this Order prevents Petitioner from
22  asserting a separate condition of confinement claim to the extent he submits the conditions versus
23  the fact of his detention violate the Constitution. (*See* Doc. No. 1 at 5-6 (alleging "bad
24  condition[s]" including delayed medical care, poor quality food, bad smells, excess noise, and
25  "racism" from security staff); *see Mendoza-Linares*, 2024 WL 3316306, at *2 n.1 (citing *Nettles*
26  *v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016)); *Lopez*, 2021 WL 2079840, at *5 (collecting
27  cases).

28  　　　The Court finds Petitioner's detention as an arriving alien for consideration of his

application for asylum is mandated under § 1225(b)(1)(B)(ii).  *See Jennings*. 583 U.S. at 303-04. As discussed in detail above, Petitioner's detention is not indefinite; there is a definite termination point after a decision on Petitioner's application for asylum, and if warranted, at the conclusion of his right to pursue all avenues for relief from removal.  There is no indication that the ongoing asylum proceedings do not serve their intended purpose or are intended to "incarcerate him for other reasons." *Demore*, 538 U.S. at 527, 538.  Therefore, the Court finds no due process violation in Petitioner's continued detention under § 1225(b)(1)(B)(ii) without a bond hearing currently. *See Romero-Romero*, 2025 WL 391861, at *9 ("Should circumstances change and continued detention appear to be indefinite in nature, due process may require a different outcome.").

Accordingly, it is hereby **ORDERED:**

1. Respondent's Motion to Dismiss (Doc. No. 13) is GRANTED.

2. Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED.

3. The Clerk of Court is directed to terminate any pending motions and CLOSE this case.

Dated:     December 5, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE